**Electronically Filed
Supreme Court
SCAP-11-0000536
03-SEP-2013
08:10 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

TRACY AH MOOK SANG, as the Personal Representative
of THE ESTATE OF MAKAMAE AH MOOK SANG, Deceased,
TRACY AH MOOK SANG, individually, and
JASON AH MOOK SANG, individually,
Plaintiffs-Appellants,

vs.

MICHAEL CLARK, DENISE CLARK, and EDEN PACIFIC PROPERTIES, INC.,
Defendants-Appellees.

SCAP-11-0000536

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CAAP-11-0000536; CIV. NO. 10-1-2358-11)

SEPTEMBER 3, 2013

RECKTENWALD, C.J., NAKAYAMA, AND MCKENNA, JJ.,
CIRCUIT JUDGE ALM, IN PLACE OF ACOBA, J., RECUSED,
AND CIRCUIT JUDGE AYABE, IN PLACE OF POLLACK, J., RECUSED

OPINION OF THE COURT BY NAKAYAMA, J.

Makamae Ah Mook Sang, according to the allegations in the complaint in this case, was fifteen years old on July 29, 2009 when she attended a house party hosted by Michael Clark,

then twenty-five years old.  Once there, Makamae was allegedly served and encouraged to drink large amounts of hard liquor.  At some point during the night, she allegedly began to feel ill and then became unconscious, yet neither Michael nor his mother Denise Clark, with whom he lived and who was present on the property at the time, rendered or summoned any aid.  The next morning, Michael then allegedly assisted in loading Makamae's apparently still-unconscious body into her friend's car and simply directed the friend to leave the property.  According to medical personnel, by that time Makamae had likely already died of acute alcohol intoxication.

Makamae's parents, Tracy, individually and as personal representative of Makamae's estate, and Jason, individually (collectively, the Ah Mook Sangs), brought the present negligence action against Michael, Denise, and Eden Pacific Properties, Inc. (collectively, the Clarks).  They seek damages under Hawaiʻi Revised Statutes (HRS) § 663-3, Hawaii's wrongful death statute, as well as for claims of emotional distress and loss of consortium due to Makamae's death.

After the Circuit Court of the First Circuit[1] granted the Clarks' motion to dismiss the Ah Mook Sangs' complaint for failure to state a claim and entered judgment thereon, the Ah

---

[1]     The Honorable Rom A. Trader presided.

2

Mook Sangs appealed. The appeal is now before this court pursuant to our order granting the Ah Mook Sangs' application for transfer of the case from the Intermediate Court of Appeals (ICA).

This appeal requires us to consider whether a social host who invites a minor onto his or her property and then directly serves alcohol to the minor owes a duty of care to prevent foreseeable injuries resulting from consumption of the alcohol, or to render or summon aid if injuries have occurred, while the minor remains on the property as a guest. While this court has previously decided cases addressing civil liability for alcohol-related injuries, we conclude, based on the discussion that follows, that those cases are factually distinguishable from the situation presented by this case. We also conclude that the statute enacted to create a right of action founded on social host liability does not apply in a case such as this where the intoxicated minor has not caused damage or injury to an innocent third party.

Accordingly, we hold that a social host in the circumstances presented in this case owes a duty of care to a minor when the host has placed the minor in a position of peril and does not act to prevent foreseeable harm to the minor that may thereby result, and when the host does not act to aid the

3

minor in the event that harm has occurred.  We therefore vacate the order and judgment of the circuit court and remand for further proceedings in this case.

## I.   BACKGROUND

### A.   Factual Background

Because this case is on appeal from a grant of a motion to dismiss the complaint, the facts alleged in the complaint are deemed to be true and viewed in the light most favorable to the Ah Mook Sangs.  See, e.g., Buscher v. Boning, 114 Hawaiʻi 202, 212, 159 P.3d 814, 824 (2007) (quoting Wong v. Cayetano, 111 Hawaiʻi 462, 476, 143 P.3d 1, 15 (2006)).

On July 29, 2009, twenty-five-year-old Michael hosted a party at his residence in Honolulu.  Denise, who is Michael's mother, also resided at the house and was present on the property during the party.  The house was owned by Eden and Anne Clark, who is Denise's mother and Michael's grandmother.  Denise is listed as the registered agent, president, and owner of Eden, a real estate company registered in the State of Hawaiʻi as a for-profit domestic corporation.

In advance of the July 29 party, Michael purchased alcohol and invited female guests he knew to be under twenty-one years of age, including fifteen-year-old Makamae.

On July 29, Makamae arrived at the party at

4

approximately 10:00 p.m. with an eighteen-year-old friend, who drove, and two other underage females.  While at the party during the night of July 29 and early morning hours of July 30, Michael provided large amounts of alcoholic beverages, including hard liquor, to Makamae and the other underage female guests.  Michael also organized and facilitated drinking games during the party and encouraged the guests, including Makamae, to participate.  Due to consumption of the large amount of alcohol provided by Michael during the party, Makamae became visibly sick and unconscious; however, at no time on July 29 or 30, 2009 did Michael or Denise render aid to Makamae, call an ambulance, or otherwise seek medical attention.

At approximately 10:00 a.m. on July 30, Michael assisted in loading Makamae's body into the car of the friend who had driven and told her to leave the property; she drove straight to the emergency room at Straub Hospital and arrived there at approximately 10:55 a.m.  Makamae was pronounced dead at 11:22 a.m., although it appeared that she was already deceased prior to that time.  Jason was contacted by Straub Hospital personnel and rushed to the emergency room but arrived after Makamae had been pronounced dead; Tracy was on the mainland at the time and received the news via telephone.  An autopsy revealed that Makamae's blood alcohol level at the time of death was .433 grams

per deciliter, and the cause of her death was determined to be acute alcohol intoxication. The Ah Mook Sangs also alleged that Makamae did not consume any alcohol on July 29 and 30, 2009 other than what was provided to her by Michael at the party.

## B. Procedural Background

The Ah Mook Sangs filed their complaint on November 4, 2010, alleging that the Clarks negligently caused Makamae's death, seeking damages pursuant to HRS § 663-3.[2] The Ah Mook

_____

[2] HRS § 663-3 (Supp. 2009) provided then, as it does now:

> **Death by wrongful act.** (a) When the death of a person is caused by the wrongful act, neglect, or default of any person, the deceased's legal representative, or any of the persons enumerated in subsection (b), may maintain an action against the person causing the death or against the person responsible for the death. The action shall be maintained on behalf of the persons enumerated in subsection (b), except that the legal representative may recover on behalf of the estate the reasonable expenses of the deceased's last illness and burial.
> (b) In any action under this section, such damages may be given as under the circumstances shall be deemed fair and just compensation, with reference to the pecuniary injury and loss of love and affection, including:
> (1) Loss of society, companionship, comfort, consortium, or protection;
> (2) Loss of marital care, attention, advice, or counsel;
> (3) Loss of care, attention, advice, or counsel of a reciprocal beneficiary as defined in chapter 572C;
> (4) Loss of filial care or attention; or
> (5) Loss of parental care, training, guidance, or education, suffered as a result of the death of the person;
> by the surviving spouse, reciprocal beneficiary, children, father, mother, and by any person wholly or partly dependent upon the deceased person. The jury or court sitting without jury shall allocate the damages to the persons entitled thereto in its verdict

(continued...)

6

Sangs also sought punitive damages.

Michael and Denise filed individual answers on December 9, 2010 and their motion to dismiss the Ah Mook Sangs' complaint for failure to state a claim upon which relief can be granted on February 10, 2011. Eden, which was represented by separate counsel at that time, filed its answer on December 23, 2010 and a joinder in the motion to dismiss on February 22, 2011. In support of the motion to dismiss, the Clarks began by noting that the Ah Mook Sangs' claims were based on the concept of social host liability; under that theory of liability, the Clarks would be held "legally responsible for Makamae's alcohol consumption and ultimate death." Specifically, the Ah Mook Sangs alleged that Michael, "an adult, negligently provided alcoholic beverages to a minor, Makamae, while she was a guest at his property[,]" and that Denise "was 'present' at the property while her son, [Michael], was providing alcohol to minors." As the alter-ego of Denise, Eden would be responsible under joint enterprise or agency liability.

While the Clarks acknowledged that the Ah Mook Sangs'

---

[2](...continued)
or judgment, and any damages recovered under this section, except for reasonable expenses of last illness and burial, shall not constitute a part of the estate of the deceased. Any action brought under this section shall be commenced within two years from the date of death of the injured person, except as otherwise provided.

claims were grounded in HRS § 663-3, Hawaii's wrongful death statute, the Clarks argued that Hawaii's common law does not recognize a plaintiff's claim for damages based on the concept of social host liability. Moreover, although the Clarks recognized that the Hawaiʻi Legislature created a limited exception to the common law in HRS § 663-41[3] by allowing claims against social hosts when the host's intoxicated guest who is under twenty-one years of age causes injury or damage to innocent third parties, they emphasized that the intoxicated minor guest has no similar claim against the host under that statute. The Clarks thus also argued that Tracy and Jason are barred from bringing their individual claims because those claims are derivative of the claims brought by Makamae pursuant to HRS § 663-3.

---

[3]      HRS § 663-41 (Supp. 2009) provided then, as it does now:

> **Right of action.**  (a) Any person twenty-one years or older who:
>  (1)    Sells, furnishes, or provides alcoholic beverages to a person under the age of twenty-one years; or
>  (2)    Owns, occupies, or controls premises on which alcoholic beverages are consumed by any person under twenty-one years of age, and who knows of alcohol consumption by persons under twenty-one years of age on such premises, and who reasonably could have prohibited or prevented such alcohol consumption;
> shall be liable for all injuries or damages caused by the intoxicated person under twenty-one years of age.
>  (b)    This section shall not apply to sales licensed under chapter 281.
>  (c)    An intoxicated person under the age of twenty-one years who causes an injury or damage shall have no right of action under this part.

In opposition, the Ah Mook Sangs primarily distinguished the Hawaiʻi cases cited by the Clarks as involving situations where intoxicated persons left the property where they consumed the alcohol and then injured themselves or others at a different location. In this case, however, the Ah Mook Sangs stressed that Makamae never left the Clarks' property and thus argued that the Clarks should be held liable because Makamae became ill and died while on their property due to their negligence.

The Ah Mook Sangs argued that, according to this court's opinion in Blair v. Ing, 95 Hawaiʻi 247, 259-60, 21 P.3d 452, 464-65 (2001), whether one owes a legal duty to another must be decided on a case-by-case basis and should be determined by consideration of several different factors:

> [w]hether a special relationship exists . . ., the foreseeability of harm to the injured party, the degree of certainty that the injured party suffered injury, the closeness of the connection between the defendants' conduct and the injury suffered, the moral blame attached to the defendants, the policy of preventing harm, the extent of the burden to the defendants and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk insured.

(Quoting Blair, 95 Hawaiʻi at 260, 21 P.3d at 465 (quoting Lee v. Corregedore, 83 Hawaiʻi 154, 164, 925 P.2d 324, 334 (1996))). Based on their analysis of these factors, the Ah Mook Sangs argued that "a legal duty to protect Makamae Ah Mook Sang against

9

injury, and to render aid when injured, should be imposed on [the Clarks] for so long as she was on their property." The Ah Mook Sangs further pointed out that a denial of the motion to dismiss would not render this case incompatible with the existing Hawaiʻi cases on dram shop liability and social host liability because of the key factual distinction in this case that Makamae never left the property and thus never caused injury to herself or to others in a different location. Rather, her injuries and death occurred on the subject property in this case, and the Clarks both provided the alcohol that gave rise to Makamae's distress while still on the property and thereafter failed to render or summon aid that could have remedied the distress they caused.[4]

The Ah Mook Sangs also argued that HRS § 663-41 does not preclude their claims. The Ah Mook Sangs acknowledged that HRS § 663-41 plainly applies to provide a claim by an innocent third party who has suffered injury or damage caused by an intoxicated person under twenty-one years of age as against a person over twenty-one years of age who either sold or furnished alcoholic beverages to the minor or owned, occupied, or controlled the premises where alcoholic beverages were consumed

---

[4] Regarding this point, the Ah Mook Sangs argued: "[A]lthough the act of allowing an intoxicated uninjured individual to leave your property is not necessarily morally acceptable, it is much more atrocious to injure someone on your property due to your providing such person with excessive amounts of alcohol and not render aid while death by alcohol poisoning occurs to that individual on your property."

by any minor, knew of the consumption, and reasonably could have prohibited or prevented the consumption. The Ah Mook Sangs recognized that pursuant to HRS § 663-41(c), the intoxicated minor cannot bring his or her own claim against the provider of alcohol or occupier of the premises where the alcohol was consumed; however, because no third parties were injured in this case, the Ah Mook Sangs' claims were not brought under HRS § 663-41 and therefore could not be precluded by it. The Ah Mook Sangs also looked to the legislative history of the bill that became HRS § 663-41 and noted from both House and Senate committee reports that the bill was intended to impose civil liability on adults who provide alcoholic beverages to minors who then injure third parties.

In a reply memorandum in further support of the motion to dismiss, the Clarks reiterated that there is no Hawaiʻi case holding that a person who furnishes alcohol to an intoxicated minor is civilly liable for the minor's injuries, and they contested the Ah Mook Sangs' assertion that they could be held liable because Makamae's injuries occurred on their property as opposed to some other location away from the property. The Clarks also argued that resort to the legislative history of HRS § 663-41 is unnecessary because that statute unambiguously provides that the intoxicated person under the age of twenty-one

11

who causes an injury or damage cannot bring a claim against the
adult furnisher or seller of the alcohol.  Moreover, because the
Clarks could not be liable for furnishing alcohol on their
property, they argued that there was as a result no liability
under HRS § 663-41(c) or existing Hawaiʻi case law for any
failure to render aid.  The Clarks also argued that the Ah Mook
Sangs did not allege facts in the complaint to support the
assertion that a special relationship existed between Makamae and
the Clarks requiring them to have affirmatively acted to prevent
Makamae from harm.

On March 24, 2011, the circuit court held a hearing on
the motion to dismiss; the parties argued based on their written
submissions, and the court granted the motion, ruling as follows:

> It's -- it's absolutely crystal clear that this
> is a tragedy of indescribable proportions for you
> folks.  Anyone who is a parent certainly I think can
> relate to a certain extent but really cannot
> comprehend unless they've been in your shoes.  So I
> make this decision because this is a court of law.
>     What clearly happened in this situation
> shouldn't have happened and basically I'm constrained
> by what the facts are that are before me in the
> record.  And I'm also constrained to apply the law
> that's before me regardless of whether or not perhaps
> it would certainly be arguable, and even there may be
> a consensus, that what happened to your daughter in
> this particular case was something that should be
> condoned in any way because I don't think anyone
> looking at the situation would be able to do so.
>     And so based upon what I have before me, the
> [c]ourt is going to respectfully adopt the arguments
> and authorities relied upon by defendant and I wil be
> granting the motion.  All right.  I fully appreciate
> and do respect the arguments that Mr. Otake has made
> on your behalf.  I'm familiar with Mr. Otake for some
> time and he's [] a very, very good and very skilled
> lawyer, and he's doing everything he possibly can on

12

your behalf. But the application of the law, as this [c]ourt sees it, unfortunately from your standpoint, results in an outcome that I know that you do not want at this stage of the proceedings.

Doesn't mean that I'm 100 percent correct. That's why there's a process involved here and I full well expect and encourage you folks to consider appealing this particular ruling. Because if I am wrong, I would full well expect the appellate court to point out precisely why and remand this matter for further proceedings. But that's -- that's for another day.

Basically, when this [c]ourt views this particular situation and I apply the standards that I must apply and I view the facts that are alleged in the complaint and all reasonable inferences there are drawn therefrom as true, this [c]ourt cannot find that there is a cause of action that survives based upon the application of the law. The cases Ono [v. Applegate, 62 Haw. 131, 612 P.2d 533 (1980)], Bertelmann [v. Taas Assocs., 69 Haw. 95, 735 P.2d 930 (1987)], Johns[t]on [v. KFC Nat'l Mgmt. Co., 71 Haw. 229, 788 P.2d 159 (1990)], Winters [v. Silver Fox Bar, 71 Haw. 524, 797 P.2d 51 (1990)], the F[aulk v. Suzuki Motor Co., 9 Haw. App. 490, 851 P.2d 332 (1993),] decision, there's probably a couple others out there, basically there's a line of cases which stand precisely for the propositions that Mr. Ortiz articulated.

And it doesn't mean that necessarily that it's as it should be, but basically the law is what it is. And under this [c]ourt's analysis simply as a matter of law, given the jurisprudence here in this state, the cause of action that is being advanced, whatever it's called, ultimately comes down to social host liability which is not recognized as a matter of law here. And if the decedent did not have a cause of action, then any other claims by survivors are purely derivative of that and also necessarily must fail.

I find significant that there is no legal authority for the proposition that the plaintiffs have asked this [c]ourt to adopt in imposing a duty on defendants in this case or essentially recognizing a cause of action that otherwise has not been recognized by any court, at least certainly by the Hawaiʻi courts. And I'll just sort of note that my view of the statute, the statute I believe is clear, is sufficiently clear, I don't believe there is ambiguity there.

And based upon my obligations to apply that and the plain language thereof, I believe that cause of action by the decedent in this particular case is not permitted and has been expressly prohibited. And absent an express indication by the Legislature or an appellate court here that -- that this is incorrect, this is the state of the law.

13

> And I would note that, as I stated earlier, that while -- while this certainly, if we took a broader moral view of right and wrong here, clearly what happened here was wrong.  And assuming that -- that the facts are as alleged, and no one, no one I don't think could defend the actions of the defendants here.  But that is not my role.
> So based upon that the [c]ourt has to expressly reject the arguments proffered by the plaintiffs.  In this particular case I do not find there's any special duty that exists here and I don't believe that the circumstances that exist, albeit to include the presence of an underage child in the presence of adults who are knowingly providing alcohol, assuming all those facts are correct, rises to the level of creating a special relationship and therefore any special duties from it.

Pursuant to the circuit court's ruling, an order granting the motion to dismiss was filed on May 17, 2011, and judgment was entered on June 28, 2011.  The Ah Mook Sangs timely appealed on July 13, 2011.

After briefing in the ICA was completed, the Ah Mook Sangs filed an application for transfer of the case to this court; the application was accepted on December 11, 2012 pursuant to HRS § 602-58(b)(1).[5]

---

[5]     HRS § 602-58 (Supp. 2011) provided then, as it does now, in pertinent part:

> (b) The supreme court, in a manner and within the time provided by the rules of court, may grant an application to transfer any case within the jurisdiction of the intermediate appellate court to the supreme court upon the grounds that the case involves:
>
> (1) A question of first impression or a novel legal question[.]

14

## II. STANDARDS OF REVIEW

### A.    Motion to Dismiss

> A complaint should not be dismissed for failure to
> state a claim unless it appears beyond doubt that the
> plaintiff can prove no set of facts in support of his
> or her claim that would entitle him or her to relief.
> We must therefore view a plaintiff's complaint in a
> light most favorable to him or her in order to
> determine whether the allegations contained therein
> could warrant relief under any alternative theory.
> For this reason, in reviewing a circuit court's order
> dismissing a complaint . . . our consideration is
> strictly limited to the allegations of the complaint,
> and we must deem those allegations to be true.

Touchette v. Ganal, 82 Hawaiʻi 293, 298, 922 P.2d 347, 352 (1996)

(quoting Baehr v. Lewin, 74 Haw. 530, 545, 852 P.2d 44, 52

(1993)) (brackets and internal citations omitted).

### B.    Statutory Interpretation

The interpretation of a statute is a question of law

reviewable de novo.  Kaleikini v. Yoshioka, 128 Hawaiʻi 53, 67,

283 P.3d 60, 74 (2012) (quoting First Ins. Co. of Haw. v. A & B

Props., 126 Hawaiʻi 406, 414, 271 P.3d 1165, 1173 (2012)).  The

following settled principles guide our interpretation of

statutes:

> First, the fundamental starting point for statutory
> interpretation is the language of the statute itself.
> Second, where the statutory language is plain and
> unambiguous, our sole duty is to give effect to its
> plain and obvious meaning.  Third, implicit in the
> task of statutory construction is our foremost
> obligation to ascertain and give effect to the
> intention of the legislature, which is to be obtained
> primarily from the language contained in the statute
> itself.  Fourth, when there is doubt, doubleness of
> meaning, or indistinctiveness or uncertainty of an
> expression used in a statute, an ambiguity exists.
> And fifth, in construing an ambiguous statute, the

> meaning of the ambiguous words may be sought by
> examining the context, with which the ambiguous words,
> phrases, and sentences may be compared, in order to
> ascertain their true meaning.

State v. Silver, 125 Hawaiʻi 1, 4, 249 P.3d 1141, 1144 (2011)
(quoting Haw. Gov't Emps. Ass'n, AFSCME Local 152, AFL-CIO v.
Lingle, 124 Hawaiʻi 197, 202, 239 P.3d 1, 6 (2010)) (internal
citations omitted).

## C.   Duty of Care

"This court addresses whether a defendant owes a duty
of care to a particular plaintiff as a question of law under the
right/wrong standard."  Blair, 95 Hawaiʻi at 253, 21 P.3d at 458
(citing Corregedore, 83 Hawaiʻi at 158, 925 P.2d at 328).  "Under
the right/wrong standard, we examine the facts and answer the
question without being required to give any weight to the trial
court's answer to it."  Corregedore, 83 Hawaiʻi at 158, 925 P.2d
at 328 (quoting State v. Meyer, 78 Hawaiʻi 308, 311, 893 P.2d
159, 162 (1995)) (internal quotation marks omitted).

## III. DISCUSSION

On appeal, the Ah Mook Sangs challenge the circuit
court's dismissal of their complaint for failure to state a
claim.  Specifically, at issue in this case is whether the Ah
Mook Sangs may pursue their claims for damages for Makamae's
injuries and death against the Clarks as social hosts or
noncommercial suppliers of alcohol.  While this court has had

16

occasion in the past to discuss liability for injuries resulting from the provision and consumption of alcohol in both commercial and noncommercial settings, the unique facts of the present case require us to distinguish it from those previous cases. Accordingly, in this case, we must then determine whether the Clarks owed Makamae any legal duty while she was on their property as a social guest.

## A.   Whether a legal duty is owed to a plaintiff must be determined on a case-by-case basis

It is well settled that a negligence action lies only where there is a duty of care owed by the defendant to the plaintiff.  See Tabieros v. Clark Equip. Co., 85 Hawaiʻi 336, 353, 944 P.2d 1279, 1296 (1997) (quoting Bidar v. AMFAC, Inc., 66 Haw. 547, 551, 669 P.2d 154, 158 (1983)).  The existence of a duty in a particular case, however, depends on the facts and circumstances attendant to that case.  As we have previously stated:

> In considering whether to impose a duty of reasonable care on a defendant, we recognize that duty is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.  Legal duties are not discoverable facts of nature, but merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done.  In determining whether or not a duty is owed, we must weigh the considerations of policy which favor the appellants' recovery against those which favor limiting the appellees' liability.  The question of whether one owes a duty to another must be decided on a case-by-case basis.

17

<u>Corregedore</u>, 83 Hawaiʻi at 166, 925 P.2d at 336 (internal citations omitted).

**B.   Previous Hawaiʻi cases concerning dram shop and social host liability are distinguishable and do not foreclose the existence of a duty in this case**

Both parties have cited to a series of Hawaiʻi cases addressing the liability of furnishers of alcohol in both commercial (dram shop liability) and noncommercial (social host liability) settings.  The Ah Mook Sangs argue that these cases are all distinguishable from the instant case and do not address the exact factual situation presented here, while the Clarks argue that these cases are directly on point and therefore that liability is foreclosed because this court has never recognized the liability of a social host for injuries sustained by an intoxicated minor.

This series of cases begins with the seminal Hawaiʻi case on dram shop liability, <u>Ono v. Applegate</u>, 62 Haw. 131, 612 P.2d 533 (1980).  In <u>Ono</u>, this court allowed an innocent third party injured by an intoxicated tavern customer to recover from the tavern that had provided liquor to the customer.  <u>Id.</u> at 136, 612 P.2d at 538.

Thereafter, in <u>Bertelmann v. Taas Associates</u>, 69 Haw. 95, 735 P.2d 930 (1987), this court declined to extend <u>Ono</u> to allow recovery directly by the intoxicated tavern customer.  In

18

that case, the decedent had been drinking alcoholic beverages at a hotel; after leaving, the decedent died from injuries sustained in a one-car accident. Id. at 96, 735 P.2d at 931. Although the decedent's survivors specifically brought their action under Ono, the circuit court dismissed their complaint. Id. at 99, 735 P.2d at 933. This court affirmed the dismissal on the basis of the well-settled common law principle that "[d]runken persons who harm themselves are solely responsible for their voluntary intoxication and cannot prevail under a common law or statutory basis." Id. at 100, 735 P.2d at 933 (citing Wright v. Moffit, 437 A.2d 554 (Del. 1981)).

In Feliciano v. Waikiki Deep Water, Inc., this court held that, without more, "aggressive sales of drinks" by a hostess bar to an "unsophisticated" nineteen-year-old plaintiff "d[id] not constitute affirmative acts that would create liability to the consumer on the part of the bar or tavern." 69 Haw. 605, 608, 752 P.2d 1076, 1079 (1988). Because Feliciano "apparently paid for the drinks and voluntarily drank them[,]" this court concluded that the bar could not be held liable for Feliciano's subsequent injuries. Id.

Subsequently, this court first addressed the potential liability of a noncommercial social host in Johnston v. KFC National Management Co., 71 Haw. 229, 788 P.2d 159 (1990). In

19

Johnston, a group of Kentucky Fried Chicken employees held a Christmas party at which they consumed alcohol. Id. at 230, 788 P.2d at 160. After that party, a group of employees moved to the home of employee Andrea Cui to continue the party; the employees partied on the Cui premises but outside the home, and Cui's parents were asleep inside the home. Id. at 231, 788 P.2d at 160. After leaving the Cui residence, Sandra Joan Parks, the tortfeasor, drove into oncoming traffic on Kapiʻolani Boulevard and collided with a moped operated by plaintiff Donna Johnston. Id. at 231, 788 P.2d at 160-61. The circuit court entered summary judgment in favor of the defendants on the ground that they owed no duty to Johnston. Id. at 231-32, 788 P.2d at 161. This court affirmed, following the lead of the majority of other jurisdictions in not "impos[ing] a duty upon a social host to protect third parties from risk of injuries that may be caused by an adult who is provided and served alcohol beverages." Id. at 234, 788 P.2d at 162. We also noted that "our legislature ha[d] not enacted any statute imposing liability upon social hosts or establishing standards of conduct for social hosts upon which this court may hold a social host civilly liable for a breach of duty to protect third persons from risks of injury from drunk driving accidents." Id. at 236-37, 788 P.2d at 163 (internal quotation marks omitted).

Shortly thereafter, in an opinion answering a certified question from the United States District Court for the District of Hawai'i, this court held in <u>Winters v. Silver Fox Bar</u> that a minor who purchases alcohol from a commercial supplier cannot thereafter bring suit against the supplier for injuries sustained by the minor himself or herself. 71 Haw. 524, 525, 797 P.2d 51, 51-52 (1990). In <u>Winters</u>, a bar in downtown Honolulu sold alcohol to eighteen-year-old Daniel Ferris in violation of the liquor control statute[6]; after leaving the bar, Ferris lost control of his car and died. <u>Id.</u> at 525-26, 797 P.2d at 52. This court emphasized that because the Legislature had prohibited minors from purchasing or otherwise acquiring alcohol, it would be inconsistent with "legislative intent or public policy . . . to allow the cause of action sought by Appellant insofar as decedent's own conduct of purchasing liquor was an activity which our legislature expressly intended to prohibit and penalize." <u>Id.</u> at 730, 797 P.2d at 54.

Most recently, in <u>Reyes v. Kuboyama</u>, this court held that the liquor control statute does impose a duty of care on a commercial liquor store operator to innocent third parties when the operator sells alcohol to a minor. 76 Hawai'i 137, 144-45,

---

[6] Thus, as we noted, Ferris also obtained alcohol in violation of related statutory provisions under which he could have been found guilty of a petty misdemeanor. <u>Winters</u>, 71 Haw. at 526 & nn.4-5, 797 P.2d at 52 & nn.4-5.

870 P.2d 1281, 1288-89 (1994).

While these cases previously decided by this court[7] have established certain general principles for cases involving either potential dram shop or social host liability, we note that this case is not governed by the holdings of the cases discussed supra. This case does not concern the provision of alcohol in a commercial setting and is therefore distinguishable from Ono, Bertelmann, Feliciano, Winters, and Reyes in that respect. Unlike Ono, Johnston, and Reyes, as well as innumerable liquor liability cases nationwide, this case does not concern a claim against a supplier of alcohol by a third party injured by an intoxicated guest or customer of the supplier. Moreover, Johnston, the only prior case discussing social host liability, is inapposite as it did not involve a claim by a guest directly against the host, but by a third party subsequently injured by one of the guests; additionally, the intoxicated guest in that case was an adult of legal drinking age who voluntarily consumed alcohol and then operated an automobile on public roads.

As alleged, this case involves a fifteen-year-old minor who was a social guest at a party hosted by a twenty-five-year-old adult; the host knew minors were present and knowingly served

---

[7]    In one case decided by the ICA, that court held on the authority of Johnston that a social host did not have a duty to protect innocent third parties from injury caused by an intoxicated adult guest of the social host. See Faulk v. Suzuki Motor Co., 9 Haw. App. 490, 851 P.2d 332 (1993).

them alcoholic beverages and encouraged them to drink.  Further, when the guest became visibly sick due to consumption of the alcohol, the host made no attempt to render or summon aid. Instead, the guest was left unconscious overnight; in the morning, the host loaded the guest's still unconscious (and probably already deceased at this point, according to Straub Hospital personnel) body into her friend's car and simply directed the friend to leave the property.  The cause of the guest's death was determined to be the ingestion itself of a large quantity of alcohol at the party, not from injuries sustained in the course of any activity subsequent to the party.

This is a set of facts not addressed by any of our previous cases; therefore, the conclusion that the Clarks may have owed a duty of care to Makamae is not foreclosed by applying the holdings of any of those cases.  As the Ah Mook Sangs also urge us to do, we must follow the guidance set forth in <u>Blair</u> and determine whether a duty of care exists based on the facts and circumstances of this particular case.

## C.   Analysis of the <u>Blair</u> factors weighs in favor of imposing a duty of care in this case

As noted, whether to impose a duty of care in any given case "requires the balancing of several factors in light of the policies favoring recovery versus those limiting liability." <u>Blair</u>, 95 Hawaiʻi at 260, 21 P.3d at 465.  Although quoted <u>supra</u>,

those factors are repeated here for convenience for the purpose

of analyzing whether to impose a duty on the Clarks in this case:

> whether a special relationship exists . . ., the
> foreseeability of harm to the injured party, the
> degree of certainty that the injured party suffered
> injury, the closesness of the connection between the
> defendants' conduct and the injury suffered, the moral
> blame attached to the defendants, the policy of
> preventing harm, the extent of the burden to the
> defendants and consequences to the community of
> imposing a duty to exercise care with resulting
> liability for breach, and the availability, cost, and
> prevalence of insurance for the risk involved.

Id. (quoting Corregedore, 83 Hawaiʻi at 164, 925 P.2d at 334).

The Ah Mook Sangs submit that each of these factors weighs in

their favor and therefore that this court should conclude that

the Clarks had a legal duty to protect Makamae against injury,

and at least to render aid when injured, "for at least so long as

she was on their property."  The Clarks argue in response that

Blair is inapplicable and only "set[s] forth factors to assist in

determining the duty owed by an attorney to beneficiaries of a

trust."  The Ah Mook Sangs have responded that there is no such

limitation in Blair, and they also note that the Blair factors

were earlier mentioned in Corregedore, a wrongful death case.

1.  Existence of a special relationship

Whether a special relationship existed between Makamae

and the Clarks features heavily in this case.  On appeal, the Ah

Mook Sangs argue that the circuit court erred (1) by concluding

there was no special relationship between Makamae and the Clarks

24

and (2) by concluding that the Clarks did not owe a legal duty to Makamae due to the absence of a special relationship, as the existence of a special relationship is only one of the aforementioned Blair factors.

The Clarks note, and we must agree, that it is a settled rule of law that a person generally has no duty to act affirmatively to protect or rescue another from harm, even when the harm is foreseeable and when assistance can be provided without any risk of peril to the would-be rescuer. (Citing Corregedore, 83 Hawaiʻi at 159, 925 P.2d at 329). Even awareness that action "is necessary for another's aid or protection does not of itself impose upon him or her a duty to take such action." (Quoting Corregedore, 83 Hawaiʻi at 159, 925 P.2d at 329 (citing Restatement (Second) of Torts § 314 (1965))) (brackets and emphasis removed). However, an exception to this general rule arises when a special relationship exists between the actor and the individual facing harm. (Citing Corregedore, 83 Hawaiʻi at 159, 925 P.2d at 329). As an exception to the general rule, it is thus true that "[i]f there is no special relationship, then there is no duty." (Citing Corregedore, 83 Hawaiʻi at 160, 925 P.2d at 329) (emphasis removed).

The general, oft-quoted definition of special relationships is found in the Restatement (Second) of Torts, and

25

reads as follows:

> (1) A common carrier is under a duty to its passengers to take reasonable action
>> (a) to protect them against unreasonable risk of physical harm, and
>> (b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.
>
> (2) An innkeeper is under a similar duty to his guests.
>
> (3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.
>
> (4) One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other.

Restatement (Second) of Torts § 314A (1965). In a comment to section 314A, it is stated that "[t]he relations listed are not intended to be exclusive, and are not necessarily the only ones in which a duty of affirmative action for the aid or protection of another may be found." Id. § 314A cmt. b.[8] The Ah Mook Sangs also refer to the following relevant Restatement sections to aid us in our analysis:

> If the actor does an act, and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reasonable care to prevent the risk from taking effect.

---

[8] Other comments to section 314A provide that "[t]he rules stated in this Section apply only where the relation exists between the parties, and the risk of harm, or of further harm, arises in the course of that relation[,]" Restatement (Second) of Torts § 314A cmt. c (1965), and that "[t]he defendant is not liable where he neither knows nor should know of the unreasonable risk, or of the illness or injury." Id. § 314A cmt. d. Thus, conversely, the Restatement would appear to support the position that a defendant can be found liable where a special relationship exists and the defendant knows or should know of the unreasonable risk of injury to the person requiring protection.

Id. § 321(1).[9]

> If the actor knows or has reason to know that by his conduct, whether tortious or innocent, he has caused such bodily harm to another as to make him helpless and in danger of further harm, the actor is under a duty to exercise reasonable care to prevent such further harm.

Id. § 322.[10]

In addition to the principles set forth in the quoted Restatement sections, the Ah Mook Sangs submit that "a possessor of land who invites someone onto his/her property holds a special

---

[9]    Comment a to section 321 provides:

The rule stated in Subsection (1) applies whenever the actor realizes or should realize that his act has created a condition which involves an unreasonable risk of harm to another, or is leading to consequences which involve such a risk.  The rule applies whether the original act is tortious or innocent.  If the act is negligent, the actor's responsibility continues in the form of a duty to exercise reasonable care to avert the consequences which he recognizes or should recognize as likely to follow.  But even where he has had no reason to believe, at the time of the act, that it would involve any unreasonable risk of physical harm to another, he is under a duty to exercise reasonable care when, because of a change of circumstances, or further knowledge of the situation which he has acquired, he realizes or should realize that he has created such a risk.

[10]    Comment a to section 322 provides:

The rule stated in this Section applies not only where the actor's original conduct is tortious, but also where it is entirely innocent.  If his act, or an instrumentality within his control, has inflicted upon another such harm that the other is helpless and in danger, and a reasonable man would recognize the necessity of aiding or protecting him to avert further harm, the actor is under a duty to take such action even though he may not have been originally at fault.  This is true even though the contributory negligence of the person injured would disable him from maintaining any action for the original harm resulting from the actor's original conduct.

relationship with the person on his/her property for so long as that person is on the property."  See Gibo v. City & Cnty. of Honolulu, 51 Haw. 299, 301, 459 P.2d 198, 200 (1969); see also Pickard v. City & Cnty. of Honolulu, 51 Haw. 134, 135, 452 P.2d 445, 446 (1969) ("[A]n occupier of land has a duty to use reasonable care for the safety of all persons reasonably anticipated to be upon the premises, regardless of the legal status of the individual.").

Taking all of these authorities together, we can conclude that by providing large amounts of hard liquor to a fifteen-year-old minor, Michael Clark knew or should have known that he created an unreasonable risk of physical harm to Makamae and thus assumed the duty to prevent the harm from occurring. Having failed to prevent physical harm from occurring, and in fact having caused the harm, Michael had the duty to prevent further harm from occurring.  Thus, while Michael otherwise would have had no duty to protect Makamae from physical harm, his affirmative acts of providing alcohol and failing to render or summon aid after Makamae became visibly ill while on his property and at his party placed him into a relationship with Makamae in which he owed her a duty of reasonable care.

Even as the Ah Mook Sangs acknowledged, however, the presence or absence of a special relationship is not the only

28

factor in determining whether a duty to the plaintiff exists, according to <u>Blair</u>.  Accordingly, as we are urged to do by the Ah Mook Sangs, we discuss the remainder of the <u>Blair</u> factors.

    2.   <u>Foreseeability of harm to the injured individual</u>

      As alleged, Michael provided large amounts of hard liquor to fifteen-year-old Makamae; consequently, Makamae became visibly ill and eventually unconscious while the party was still ongoing.  We agree with the Ah Mook Sangs that Michael's actions in providing the alcohol and encouraging Makamae and others to drink created a clearly foreseeable risk of the resultant physical harm.  Accordingly, this factor weighs in favor of the Ah Mook Sangs.

    3.   <u>The degree of certainty that the injured party suffered injury</u>

      From the allegations in the complaint, it is certain that Makamae was not conscious as she was driven away from the Clark residence on the morning of July 30, 2009; indeed, according to Straub Hospital personnel, she was probably already deceased at that time.  Further, as Makamae became visibly ill, was in serious distress, and became unconscious during the party, the Clarks were or should have been aware of the fact that Makamae was injured and in need of assistance.  This factor also weighs in favor of the Ah Mook Sangs.

   4. <u>The closeness of the connection between the defendants'</u>
<u>conduct and the injury sustained</u>

    An important fact in this case is that Makamae died of
acute alcohol intoxication, or alcohol poisoning.  Unlike most
other cases to which the parties have cited, Makamae's injuries
were not caused by an automobile accident, physical altercation,
or some other incident separate and apart from the social
gathering.  Here, Michael provided large amounts of hard liquor
to Makamae; as a direct result of ingesting that alcohol, Makamae
became ill, then unconscious, and died.  Further, the Ah Mook
Sangs allege that the Clarks' inaction subsequent to Makamae's
ingestion of alcohol in failing to render or summon aid also
contributed to her eventual death.  Accordingly, the direct
connection between the Clarks' acts and omissions and Makamae's
injuries and death weighs this factor in favor of the Ah Mook
Sangs.

   5. <u>The moral blame attached to the defendants</u>

    While the concept of moral blame can be difficult to
qualify, the Ah Mook Sangs submit that it is not only immoral but
also criminal for a twenty-five-year-old to provide any amount of
alcohol to a fifteen-year-old minor.  (Citing HRS § 712-1250.5
(Supp. 2008)[11]).  The Ah Mook Sangs further argue that "fail[ing]

---

   [11]  HRS § 712-1250.5 provided then, as it does now, in pertinent part:

                (continued...)

to take reasonable steps to prevent further harm" and "fail[ing] to render any aid to the 15 year old when she is dying of alcohol poisoning is atrocious."  Based on the allegations of the complaint, the series of events involving Michael's invitation of Makamae to his residence for the party, provision of alcohol to Makamae, and failure to render assistance when the alcohol caused her to become ill is sufficient for this factor to weigh in favor of the Ah Mook Sangs.

6.  <u>The policy of preventing harm</u>

Generally speaking, an actor should always pursue a course of action that tends to eliminate or minimize harm to others.  In this case, as the hosts of the party and the occupiers of the property where the party took place, the onus of preventing harm to guests, particularly minors such as Makamae,

---

[11](...continued)
**Promoting intoxicating liquor to a person under the age of twenty-one**.  (1) A person, including any licensee as defined in section 281-1, commits the offense of promoting intoxicating liquor to a person under the age of twenty-one if the person knowingly:
    (a)  Sells or offers for sale, influences the sale, serves, delivers, or gives to a person intoxicating liquor, and the person receiving the intoxicating liquor is a person under the age of twenty-one; or
    (b)  Permits a person to possess intoxicating liquor while on property under his control, and the person possessing the intoxicating liquor is a person under the age of twenty-one.

. . .

    (4)  Promoting intoxicating liquor to a person under the age of twenty-one is a misdemeanor.

lay solely with the Clarks.  Thus, as the Ah Mook Sangs argue, "imposing a legal duty on an adult possessor of land who chooses to serve a minor alcohol on his/her property for at least as long as said minor remains on his/her property would, <u>inter alia</u>, discourage and punish such reprehensible actions on the part of adults and help curb problems resulting from consumption of alcohol by minors."  Under the circumstances of this case, this factor weighs in favor of the Ah Mook Sangs.

7.     <u>The extent of the burden to the defendants and consequences of imposing a duty to exercise care with resulting liability for breach</u>

As also mentioned in discussing the previous factor, the Clarks were in complete control of the property, the party, and the supply and provision of the alcohol.  Accordingly, should they decide to take the risk in choosing to violate the law in serving alcohol to minors, it seems fair that they should bear the burden of exercising care for the safety of those minors while on the property and the consequence of liability for breach of that duty.  Again, under the circumstances of this case, this factor weighs in favor of the Ah Mook Sangs.

8.     <u>The availability, cost, and prevalence of insurance for the risk involved</u>

As the Ah Mook Sangs note, this factor should not weigh heavily in the overall <u>Blair</u> analysis because the availability or unavailability of liability insurance should not affect whether a

defendant owes a duty of care to a plaintiff in a particular situation. The Ah Mook Sangs assert that insurance will likely not cover liability for injuries caused as a result of provision of alcohol to a minor but stress that the unavailability of coverage could directly derive from the unlawfulness of the provision.

However, based on the procedural posture of this case, there is actually no information in the record before us regarding the availability and cost of liability insurance for the harm that has occurred in this case. Because such information may yet be forthcoming, and in light of our conclusion that the other factors weigh in favor of the Ah Mook Sangs, we need not conclusively address this factor.

9. Conclusion

Our review of the factors set forth in Blair (by way of Corregedore) demonstrates that, with only the exception of the final factor, the interest in imposing a duty of care weighs heavily in favor of the Ah Mook Sangs.

Consequently, in light of the facts and circumstances of this case as alleged in the Ah Mook Sangs' complaint, we are convinced that the Clarks owed a legal duty to Makamae while she was on their property to protect her from harm and, failing that, to render or summon aid once harm occurred.

**D.   HRS § 663-41 also does not preclude the Ah Mook Sangs'
claims in this case**

The Clarks argued in their motion to dismiss that the

Ah Mook Sangs' claims were barred by application of HRS § 663-41

because that statute specifically prohibits claims for damages by

intoxicated persons under twenty-one years of age.  The circuit

court based its decision to dismiss the complaint in part on this

statute.  Also quoted in footnote 3, HRS § 663-41 reads as

follows:

> **Right of action**.  (a) Any person twenty-one years or
> older who:
> (1)   Sells, furnishes, or provides alcoholic
>       beverages to a person under the age of twenty-
>       one years; or
> (2)   Owns, occupies, or controls premises on which
>       alcoholic beverages are consumed by any person
>       under twenty-one years of age, and who knows of
>       alcohol consumption by persons under twenty-one
>       years of age on such premises, and who
>       reasonably could have prohibited or prevented
>       such alcohol consumption;
> shall be liable for all injuries or damages caused by the
> intoxicated person under twenty-one years of age.
> (b)   This section shall not apply to sales licensed
> under chapter 281.
> (c)   An intoxicated person under the age of twenty-
> one years who causes an injury or damage shall have no right
> of action under this part.

The Clarks thus maintain that pursuant to the plain language of

subsection (c) of the statute, the Ah Mook Sangs are expressly

barred from seeking any damages for Makamae's injuries.

As the Ah Mook Sangs contend, and as we have stated

previously with regard to the interpretation of statutes, "our

foremost obligation is to ascertain and give effect to the

intention of the legislature, which is to be obtained primarily from the language contained in the statute itself." Lingle v. Haw. Gov't Emps. Ass'n, 107 Hawaiʻi 178, 183, 111 P.3d 587, 592 (2005) (quoting Guth v. Freeland, 96 Hawaiʻi 147, 149-50, 28 P.3d 982, 984-85 (2001)).  Further, "we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose." Id.  Moreover, "[t]he legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality." State v. Arceo, 84 Hawaiʻi 1, 19, 928 P.2d 843, 861 (1996) (internal quotation marks, citation, and brackets omitted).

Both parties agree that the purpose of HRS § 663-41 is to allow claims by third parties against adult noncommercial suppliers of alcohol (or occupiers of premises where alcohol was consumed) in cases where the adult supplied alcohol to a minor who then became intoxicated and injured the third party.  This is provided for by subsection (a) of the statute.  What the parties dispute is the import of subsection (c), which provides that "[the intoxicated minor] who causes an injury or damage shall have no right of action under this part."

The Clarks argue, as they did to the circuit court, that subsection (c) completely bars a claim by an intoxicated

35

person under the age of twenty-one who causes any injury or damage, regardless of whether that injury or damage is to the minor himself or herself or to a third party.  They argue that this prohibition is also consistent with cases such as <u>Bertelmann</u> and <u>Winters</u> "that preclude minors from a cause of action for injuries or damages caused by their voluntary intoxication."  On the other hand, the Ah Mook Sangs argue, as they also did to the circuit court, that their claims were not brought "under this part" as specified in subsection (c) and therefore are not barred by the statute.  They also argue that the Legislature did not intend for this statute to prohibit claims when injuries are sustained solely by the intoxicated minor.  Such a dispute about the meaning of the statute suggests that there may be an ambiguity; at the very least, the parties offer conflicting views as to how the statute should be read.

We may thus examine the legislative history of Senate Bill 1234, the bill signed into law as Act 69 in 2003 and codified as HRS § 663-41, to further ascertain the intent of the Hawaiʻi Legislature that passed the bill.  In its report on the bill, the Senate Committee on Human Services stated, in pertinent part:

> Your Committee finds that underage drinkers pose a danger to themselves and others, <u>particularly when they drink and drive</u>.  High school students from around the country report that one-third to one-half of those who wish to drink obtain alcoholic beverages from adults.  In 2000, MADD-Hawaii

36

> sponsored a Hawaii Youth Summit.  The leading recommendation from the youth representatives to the Hawaii Summit was to increase the education and liability of parents and other adults relating to providing alcohol to minors.  This measure would impose civil third-party liability on adults who provide alcoholic beverages to a person under twenty-one years of age who <u>subsequently injures or kills another</u>.

S. Stand. Comm. Rep. No. 462, in 2003 Senate Journal, at 1219 (emphases added).  The Senate Committee on Judiciary and Hawaiian Affairs then stated, in pertinent part: "Your Committee finds that underage drinking is a serious problem in Hawaii. . . . In the past five years, an average of twenty-six fatalities resulted from crashes involving drivers fifteen to twenty years old, many of these were alcohol related."  S. Stand. Comm. Rep. No. 632, in 2003 Senate Journal, at 1294.  From these reports, we can understand that the intent of the Legislature in passing this bill was to address the serious problem of underage drinking where an adult host supplied alcohol or the premises where alcohol was consumed and the intoxicated minor thereafter caused injury or damage to an innocent third party, most likely by driving drunk.

Thus, returning to the text of the statute, the inclusion of the phrases "caused by" in subsection (a) and "causes" in subsection (c) is significant.  Cause is defined as "[t]o bring about or effect."  <u>Black's Law Dictionary</u> 251 (9th ed. 2009).  If the intoxicated minor "causes" injury or damage as envisioned in subsection (c), then the intoxicated minor was an

actor who "br[ought] about" injury or damage; as the committee reports indicate, the "injury or damage" targeted by the bill is that of the third parties who are injured or suffer property damage due to accidents caused by such intoxicated minors. The bill addresses liability of adult social hosts to innocent third parties injured by the intoxicated minors they have hosted; it thus becomes clear that subsection (c) was intended to prevent the intoxicated minor from bringing a claim against the adult host for any injuries sustained when the minor also had a role in injuring the third party. It is often the case that a statutory claim may be barred when the conduct giving rise to that claim is prohibited by some other statute. The public policy at play in such cases is that the would-be claimant should not be allowed to derive any benefit from having engaged in prohibited conduct.

Given this understanding of the statute, there is actually no indication that it was meant to encompass the factual situation at issue in this case: when the injury is inflicted directly upon the minor by the host through the provision of alcohol, and the claim is only between the minor and the host. If the Legislature had wished to prohibit the claim made in this case through HRS § 663-41 by referring to injuries sustained by the intoxicated minor himself or herself, it could have, for example, used the word "sustained" or enacted another subsection

38

or separate statute altogether clearly barring first-party injury claims against social hosts. Because we do not read the statute to include injuries sustained by the intoxicated minor absent injury or damage to a third party, we conclude that HRS § 663-41 does not bar the claims made by the Ah Mook Sangs in this case.

### IV. CONCLUSION

Based on the foregoing, we vacate the circuit court's May 17, 2011 order and June 28, 2011 judgment and remand this case for further proceedings.

| | |
|---|---|
| Thomas M. Otake (Diane K. Agor-Otake with him on the briefs) for plaintiffs-appellants | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| | /s/ Sabrina S. McKenna |
| Jonathan L. Ortiz (Wade J. Katano and Christine S. Prepose-Kamihara with him on the briefs) for defendants-appellees | /s/ Steven S. Alm |
| | /s/ Bert I. Ayabe |

